J-S32008-20 & J-S32009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VALNN D. SPEARS | : | |
| | : | |
| Appellant | : | No. 2424 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 26, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000934-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VALNN D. SPEARS | : | |
| | : | |
| Appellant | : | No. 2439 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 26, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001307-2018

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    Filed: April 14, 2021

Appellant, Valnn D. Spears, appeals from the aggregate judgment of sentence of 44 years and 8 months to 148 years and 4 months, which was imposed after his jury trial convictions for two counts each of rape of a child, involuntary deviate sexual intercourse with a child, indecent assault, unlawful

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 1 -

contact with minor relating to sexual offenses, endangering welfare of children, and corruption of minors and one count each of incest, disseminating explicit sexual materials to a minor, aggravated indecent assault, and indecent exposure.[1] On appeal, Appellant raises evidentiary claims and challenges the constitutionality of his classification as a Tier III sex offender under Pennsylvania's Sex Offender Registration and Notification Act ("SORNA"),[2] with its lifetime sex offender registration requirements.[3] After careful review, we affirm.

On May 23, 2018, Appellant was charged with various crimes relating to his sexual abuse of his two sons, E.S. and M.S., from 2008 to 2015. E.S. testified at Appellant's jury trial. During cross-examination of E.S., when Appellant attempted to admit an electronic mail message ("e-mail"), purportedly sent by E.S. to Appellant, the following dialogue occurred:

> Q. Okay. So, [E.S.], if you take a look at Defen[dant's] Exhibit 8, please, and there's the body of an email, begins at the bottom, and it looks to be from [4]@gmail.com, okay?
>
> A. Yeah.

---

[1] 18 Pa.C.S. § 3121(c), § 3123(b), § 3126(a)(7) ("complainant is less than 13 years of age"), § 6318(a)(1), § 4304(a)(1) ("parent, guardian or other person supervising the welfare of a child under 18 years of age . . . commits an offense"), § 6301(a)(1), § 4302, § 5903(c)(1), § 3125(a)(7) ("complainant is less than 13 years of age"), and § 3127(a), respectively.

[2] 42 Pa.C.S. §§ 9799.10-9799.42.

[3] SORNA's tier system is explained in more detail below.

[4] The local part of the e-mail address is E.S.'s name. We have removed this information in order to protect E.S.'s privacy.

Q.    And the time stamp says October 8, 2017 at 2:11 a.m. in the morning; is that correct?

A.    Yeah.

Q.    Did you send that message?

A.    No, I don't remember.

Q.    You don't remember?

A.    No.

Q.    So you might have sent it?  You might not have sent it?

A.    No, I don't.

Q.    You don't remember?

A.    No, I don't think I did.

Q.    Okay.  You're the one who has access to []@gmail.com, correct?

A.    Yeah.

Q.    And the message says, "Hey I need you to send me a iPhone please, I need one.  Don't tell anyone I sent you this.  And DON'T put your name on it.  [E.S.]," correct?

A.    Yeah. . . .

Q.    Okay.  And then there was a second message nine minutes later, at 2:20 a.m., and that says, "I also need you to send me 12 pictures of your penis and 1 video, so that I can get a free laptop, [E.S.]?"

A.    Yeah, I don't remember sending that.

N.T. Testimony of E.S., 12/5/2018, at 49-50 (capitalization in original).

Appellant did not move to admit the exhibit at this time.  E.S.'s mother ("Mother") also testified about E.S.'s initial disclosure to her and her conduct immediately thereafter.  Trial Court Opinion, dated October 15, 2019, at 3-6.

- 3 -

Appellant called John Kowalczyk, an investigator for the Public Defender's Office. N.T., 12/6/2018, at 46-47. Kowalczyk was shown two exhibits marked as Defendant's Exhibits 15 and 16.[5] *Id.* at 48-49. Kowalczyk testified that the exhibits were e-mails that he received from Appellant's Gmail[6] account, which were addressed to Appellant from a Gmail address that appeared to be in E.S.'s name. *Id.* at 49-50. Appellant moved for their admission, and the Commonwealth objected on the basis of insufficient foundation. *Id.* at 50. After argument by both parties, the trial court concluded that the e-mails had not been properly authenticated and sustained the objection, but the court agreed to "make them part of the record for appellate review." *Id.* at 54.

> Appellant was convicted in both cases on all counts that were submitted to the jury.[3] Prior to being sentenced, Appellant filed a "Motion to Declare SORNA Unconstitutional and Preclude Sex Offender Registration," wherein he requested, *inter alia*, that th[e trial c]ourt not conduct a Sexually Violent Predator ("SVP") hearing, as same violated his constitutional rights. [The trial court] granted Appellant's Motion in part, based on **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017), and declined to hold an SVP hearing. All other aspects of Appellant's Motion were denied without prejudice for Appellant to raise same post-sentence.

---

[5] None of these exhibits are included in the certified record, but, from their descriptions in the notes of testimony, the content of Defendant's Exhibits 15 and 16 appears to be identical to that of Defendant's Exhibit 8, except that Defendant's Exhibits 15 and 16 were divided into two separate documents instead of presented as one e-mail chain, as they were in Exhibit 8.

[6] Gmail is a free e-mail service developed by Google.

> <sup>3</sup> In case number 1307 CR 2018, there was an Amended Criminal Information after th[e trial c]ourt granted the Commonwealth's motion to withdraw Count VII. Additionally, to the extent the Amended Criminal Information in case number 1307 CR 2018 included counts that were duplicative of the counts in the Criminal Information in case number 934 CR 2018, only one of each count was submitted to the jury.

Trial Court Opinion, dated October 15, 2019, at 1-2. There was no finding by the jury of when the offenses related to Appellant's convictions actually occurred. *See* Verdict Sheet, 12/7/2018.

During his sentencing hearing on April 26, 2019, Appellant raised and preserved the issue of whether SORNA was punitive. N.T., 4/26/2019, at 6, 16. The trial court denied Appellant's motion without prejudice to raise it in a post-sentence motion. *Id.* at 21.

At Docket Number CP-45-CR-0000934-2018, the trial court sentenced Appellant to an aggregate judgment of 248 to 748 months of confinement – *i.e.*, 20 years and eight months to 62 years and four months of confinement. At Docket Number CP-45-CR-0001307-2018, the trial court sentenced Appellant to an aggregate judgment of 288 to 1,032 months of confinement – *i.e.*, 24 to 86 years of confinement – to be served consecutively to Appellant's sentence at Docket Number CP-45-CR-0000934-2018. Accordingly, Appellant's total sentence of confinement is 44 years and eight months to 148 years and four months.

> Appellant is classified as a Tier III Sex Offender and is subject to lifetime registration requirements as set forth in 42 Pa. C.S.A. § 9799.23. Appellant was notified of his Sex Offender Registration classification and requirements at sentencing. On May 6, 2019,

> Appellant filed timely "Post Sentence Motions" wherein the only issue raised was a challenge to the constitutionality of SORNA as applied to Appellant.
>
> On May 31, 2019, [the Court of Common Pleas of Monroe County] sat *en banc . . .* to hear Appellant's SORNA challenge along with a number of other defendants who had likewise challenged SORNA's constitutionality.

Trial Court Opinion, dated October 15, 2019, at 2. At the hearing, Appellant again raised and preserved the issue of whether SORNA was punitive. N.T., 5/31/2019, at 9-11, 16-19. He additionally raised and preserved the question of whether SORNA violated due process by creating a rebuttable presumption that a sex offender is likely to reoffend. *Id.* at 15-16. Appellant requested that the *en banc* panel declare SORNA unconstitutional in its entirety, citing to a decision from the Chester County Court of Common Pleas, *Commonwealth v. Torsilieri*, Docket Number CP-15-CR-0001570-2016,[7]

_____

[7] At the time of the *en banc* panel of the Court of Common Pleas of Monroe County, two appeals of the *Torsilieri* decision from the Court of Common Pleas of Chester County were pending: one appeal by Defendant Torsilieri before this Court, *Commonwealth v. Torsilieri*, 221 A.3d 280 (Pa. Super. 2019); **and** a second appeal by the Commonwealth filed directly to the Supreme Court of Pennsylvania pursuant to 42 Pa.C.S. § 722(7) (relating to the Supreme Court's exclusive jurisdiction over appeals from final orders of the Court of Common Pleas in matters where the Court of Common Pleas has held, *inter alia*, a statute to be unconstitutional), *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020). In the former, this Court affirmed, and Defendant Torsilieri petitioned for allowance of appeal with the Pennsylvania Supreme Court, which our Supreme Court denied. *Commonwealth v. Torsilieri*, 230 A.3d 338 (Pa. 2020).

which found Subchapter H[8] of SORNA to be unconstitutional. *Id.* at 23. "By Order *en banc*, Appellant's post-sentence motion regarding SORNA was denied on July 18, 2019." Trial Court Opinion, dated October 15, 2019, at 2. On August 19, 2019, Appellant filed this timely[9] direct appeal.[10]

Appellant presents the following issues for our review:

1. Whether the [t]rial [c]ourt erred when it admitted the hearsay statements of one of the victims ([N.T.], 12/5/18, at pg. 210) presented through his mother?

2. Whether the [t]rial [c]ourt erred when it excluded the e-mails ([N.T.], 12/6/18, at pg. 50 et seq) sent from the e-mail account of the victim, E.S., to the Appellant because the e-mails were not authenticated?

[3.] Does registration under Act 29[11] constitute criminal punishment and therefore violate the separation of powers doctrine because it usurps exclusive judicial adjudicatory and sentencing authority?

[4.] If registration under Act 29 is punishment, does the imposition of mandatory sex offender registration for the instant offense constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution?

---

[8] The relevant subchapters of the current version of SORNA are discussed in more detail below.

[9] Thirty days after July 18, 2019, was Saturday, August 17, 2019. The next business day thereafter was Monday, August 19, 2019. *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.").

[10] Appellant filed his statement of errors complained of on appeal on September 9, 2019. The trial court entered its opinion on October 15, 2019.

[11] Act 29 of 2018 is discussed in more detail below.

[5.] If registration under Act 29 is punishment, does it contravene the 5th, 6th and 14th Amendments of the United States Constitution and the corresponding protections of the Pennsylvania Constitution because not every fact necessary to support the imposition of a mandatory minimum sentence must be found by a jury beyond a reasonable doubt?

[6.] Does registration under Act 29 violate substantive due process under Article 11 [*sic*] of the Pennsylvania Constitution because it deprives individuals of the fundamental right to reputation and fails to satisfy strict scrutiny?

[7.] Does registration under Act 29 deny defendant due process under Articles 1 and 11 [*sic*] of the Pennsylvania Constitution because it creates an irrebuttable presumption that those convicted of enumerated offenses "pose a high risk of committing additional sexual offenses" depriving those individuals of their fundamental right to reputation?

[8.] Does registration under Act 29 deny defendant procedural due process under the Pennsylvania and Federal Constitutions because it unlawfully impinges the right to reputation without notice and an opportunity to be heard?

Appellant's Brief at 4-6 (issues re-ordered to facilitate disposition).

**Evidentiary Issues**

Appellant's first two claims challenge the admission of evidence.

The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. . . . Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice.

***Commonwealth v. Clemons***, 200 A.3d 441, 474 (Pa. 2019) (citations

omitted).

Preliminarily, we note that Appellant's first challenge concerns Mother's

testimony. However, the notes from Mother's testimony were not included in

- 8 -

the certified record.[12]  It is the responsibility of the party raising an issue on appeal to guarantee that all of the documents that this Court will need to render a decision are in the certified record; as this Court has explained:

> A failure to ensure that the record is complete risks waiver of appellate issues that are dependent on the missing items.[8]
>
>> [8] **See, e.g.**, **Lundy v. Manchel**, 865 A.2d 850, 855 (Pa. Super. 2004) (where appellant based claim on partnership dissolution agreement, but agreement did not appear in the certified record, claim was deemed waived); **Eichman v. McKeon**, 824 A.2d 305, 316 (Pa. Super. 2003) (where issue on appeal was whether trial court erred in failing to sanction defendant for alleged discovery violation, but documents necessary to evaluate that claim were absent from the record, issue was deemed waived), **appeal denied**, 576 Pa. 712, 839 A.2d 352 (2003).  As the Note to Appellate Rule 1921 points out, the responsibility for assuring that needed materials are included in the certified record rests with the party relying on those materials.  Because that usually is the appellant—the party seeking relief from the adverse judgment in the trial court—we have frequently stated that the appellant bears this responsibility and risks waiving appeal rights by a failure to comply.  **See, e.g.**, **Commonwealth v. Wint**, 730 A.2d 965, 967 (Pa. Super. 1999); Pa.R.A.P. 1931, Expl. Cmt.—2004.  **See also Commonwealth v. Almodorar**, 610 Pa. 368, 20 A.3d 466, 467 (2011) (discussing shared responsibility of appellant and trial court under Pa.R.A.P. 1931).

**Erie Insurance Exchange v. Moore**, 175 A.3d 999, 1006-07 (Pa. Super. 2017), *aff'd*, 228 A.3d 258 (Pa. 2020).  As Appellant – *i.e.*, the party challenging Mother's testimony – did not confirm that the requisite notes of testimony were in the record, this challenge is waived.

---

[12] Our Prothonotary contacted Monroe County, which transmitted other missing transcripts to this Court; nevertheless, the notes of testimony for Mother remained absent from the record.

- 9 -

Next, Appellant contends that the trial court erred when it denied the admission of e-mails from E.S. to Appellant on the basis that they were not authenticated. Appellant's Brief at 18. Appellant continues that the evidence that E.S. acknowledged that his e-mail address was listed as the sender on the e-mails and that no one else had the log-in information for E.S.'s e-mail account, combined with Kowalczyk's testimony that he had retrieved the same e-mails from Appellant's e-mail address, should have been enough to authenticate the e-mails. *Id.*

Again, the exhibits at issue – Defendant's Exhibit 8 or Defendant's Exhibits 15 and 16 – were not in the certified record, despite the trial court's instruction that they be included for our review. N.T., 12/6/2018, at 54. For this reason, we could once more find waiver of this claim due to Appellant's failure to ensure that the record was complete. *Erie*, 175 A.3d at 1006-07. However, the content of the e-mails was read aloud during trial, and the notes of testimony containing those recitations were included in the certified record.[13] N.T. Testimony of E.S., 12/5/2018, at 49-50. Accordingly, we know what the e-mails stated and consequently choose not to find waiver; ergo, we consider the question of whether the e-mails were properly authenticated.

_____

[13] More accurately, the notes of testimony were added to the certified record after this Court's Prothonotary contacted Monroe County requesting missing documents.

> Pennsylvania law holds that authentication is a threshold inquiry for all evidence and provides that the following principles govern authentication of digital communications . . .
>
> Pursuant to Pennsylvania Rule of Evidence 901, authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. **See** Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. **See** Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). **See** Pa.R.E. 901(b)(4).

**Commonwealth v. Talley**, 236 A.3d 42, 59 (Pa. Super. 2020) *reargument denied* (September 23, 2020).

In **Commonwealth v. Koch**, 39 A.3d 996 (Pa. Super. 2011), this Court considered the necessary procedure for authenticating another form of electronic communication, text messages. In **Koch**, a detective testified at trial that incriminating text messages came from a cellular telephone belonging to the defendant; this Court concluded that "authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person." **Id.** at 1005. This Court continued that the testimony of the detective was insufficient to authenticate the text messages, where there was no testimony from any person who had sent or received the text messages nor any contextual clues revealing the identity of the sender. **Id.** This Court hence concluded that the admission of the text messages constituted an abuse of discretion. **Id.**

Analogously, in the current action, an investigator, Kowalczyk, testified that electronic communications came from an e-mail address belonging to a victim, E.S. *Compare* N.T., 12/6/2018, at 49-50, *with Koch*, 39 A.3d at 1005. E.S. also testified that the e-mail address listed on the exhibits belonged to him. N.T. Testimony of E.S., 12/5/2018, at 49-50. However, as this Court observed in *Koch*, "authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person." 39 A.3d at 1005. Just as this Court concluded that the testimony of the detective in *Koch* was insufficient to authenticate the text messages, we find that the testimony of Kowalczyk is insufficient to authenticate the e-mails, where there was no testimony from either the person who had allegedly sent the e-mail or the recipient of the e-mail – *i.e.*, from either E.S. or Appellant – to authenticate the e-mails. *See id.* In fact, greater doubt exists as to the authenticity of the e-mails in the current appeal than of the text messages in *Koch*, because, in the current case, the alleged sender, E.S., had no recollection of having sent the messages. N.T. Testimony of E.S., 12/5/2018, at 49-50. Additionally, the e-mail are short, consisting of one to three sentences each, and thereby provide no circumstantial evidence nor contextual clues revealing the identity of the sender. *Compare id. with Talley*, 236 A.3d at 59 (citing Pa.R.E. 901(b)(4)), *and Koch*, 39 A.3d at 1005. In *Koch*, the text messages had been admitted at the trial court level, and this Court held that the trial court had abused its

discretion in doing so. 39 A.3d at 1005. In the current matter, the trial court had precluded the admission of the e-mails, and we therefore conclude that the trial court did not abuse its discretion in doing so. *Clemons*, 200 A.3d at 474; *Koch*, 39 A.3d at 1005. Thus, Appellant is not entitled to relief on either of his evidentiary challenges, and we therefore affirm his convictions.

**SORNA**

Appellant's remaining claims concern his sexual offender registration requirements. "A challenge to the legality of sentence is a question of law; our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Alston*, 212 A.3d 526, 528 (Pa. Super. 2019). Nonetheless, before we can address the merits of Appellant's issues related his registration requirements, we must review the relevant sexual offender regulatory statutes and several relevant cases interpreting them.

On October 24, 1995, the first sex offender registration law, known as Megan's Law , was enacted, but, in 1999, the Supreme Court of Pennsylvania deemed substantial portions of it to be unconstitutional. *Commonwealth v. Williams*, 733 A.2d 593 (Pa. 1999).

> In the wake of *Williams* . . . , the General Assembly enacted Megan's Law II, 42 Pa.C.S. §§ 9791–9799.7 (expired), in May 2000 to address the constitutionally defective aspects of Megan's Law I, relating to SVP designation. . . . [Megan's Law II] mandated either ten-year or lifetime registration of their addresses upon release and any subsequent change in address, which information was provided to the local chief of police.

*Commonwealth v. Torsilieri*, 232 A.3d 567, 576 (Pa. 2020).

The General Assembly made further amendments to Megan's Law II with the passage of Act 152 of 2004, which was signed into law on November 24, 2004. Those amendments are sometimes referred to as "Megan's Law III." They were deemed unconstitutionally enacted in ***Commonwealth v. Neiman***, 84 A.3d 603 (Pa. 2013).

Prior to the Supreme Court's decision in ***Neiman***, ***id.***, on December 20, 2011, the General Assembly passed the P.L. 446, No. 111, § 12, which was effective one year thereafter; this act replaced Megan's Law with SORNA (later, retroactively referred to as "SORNA I"). According to the accompanying legislative findings: "Sexual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. § 9799.11(a)(4). Additionally,

> SORNA [I] classifie[d] offenders and their offenses into three tiers. 42 Pa.C.S. § 9799.14. Those convicted of Tier I offenses are subject to registration for a period of fifteen years and are required to verify their registration information and be photographed, in person at an approved registration site, annually. 42 Pa.C.S. § 9799.15(a)(1), (e)(1). Those convicted of Tier II offenses are subject to registration for a period of twenty-five years and are required to verify their registration information and be photographed, in person at an approved registration site, semi-annually. 42 Pa.C.S. § 9799.15(a)(2), (e)(2).
>
> Those convicted of Tier III offenses are subject to lifetime registration and are required to verify their registration information and be photographed, in person at an approved registration site, quarterly. 42 Pa.C.S. § 9799.15(a)(3), (e)(3).

*Commonwealth v. Muniz*, 164 A.3d 1189, 1206-07 (Pa. 2017) (plurality) (footnotes omitted).  When SORNA I first became effective on December 20, 2012, it applied to convicted sex offenders already required to register and prior sex offender registration requirements expired.  *See* 42 Pa.C.S. § 9799.10(4).  In *Muniz*, 164 A.3d 1189,

> [the Supreme] Court [of Pennsylvania] . . . found SORNA [I] violated . . . offenders' *ex post facto* rights due to its retroactive application to those convicted prior to its effective date of December 20, 2012. . . . [T]he Court concluded that SORNA was punitive, such that retroactive application of the provision violated Pennsylvania's *ex post facto* clause.

*Torsilieri*, 232 A.3d 567, 580 (Pa. 2020).

In response to *Muniz*, the General Assembly amended SORNA on February 21, 2018, by passing Act 10 of 2018, which was immediately effective.  *See* P.L. 27, No. 10, §§ 1-20.

> Act 10 split SORNA, which was previously designated in the Sentencing Code as Subchapter H, into two subchapters.  Revised Subchapter H applies to crimes committed on or after December 20, 2012, whereas Subchapter I applies to crimes committed after April 22, 1996, but before December 20, 2012. In essence, Revised Subchapter H retained many of the provisions of SORNA, while Subchapter I imposed arguably less onerous requirements on those who committed offenses prior to December 20, 2012, in an attempt to address [the] conclusion in *Muniz* that application of the original provisions of SORNA to these offenders constituted an *ex post facto* violation.

*Torsilieri*, 232 A.3d at 580-81.  On June 12, 2018, the General Assembly passed Act 29 of 2018, re-enacting and amending SORNA; it was immediately effective.  *See* P.L. 140, No. 29, §§ 1-23.

The question of whether current Subchapter H or Subchapter I of SORNA applies to Appellant thus is a crucial starting point. According to *Alston*, 212 A.3d at 528, 530, "when an appellant's offenses straddle the effective dates of Subchapters H and I of SORNA" and "the jury did not specifically find the date of the offenses," the application of Subchapter H is unconstitutional, as it "mirrors the version of SORNA found unconstitutional in" *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (plurality); "instead, the court should apply Subchapter I." Analogously, in the current action, Appellant's criminal sexual conduct straddles the operative dates for Subchapters H and I, and the jury did not make a specific finding as to the dates of the offenses. Consequently, the registration requirements under Subchapter I apply to Appellant.

This finding is significant, because, during the pendency of this appeal, the Supreme Court of Pennsylvania decided *Commonwealth v. Lacombe*, 234 A.3d 602, 626 (Pa. 2020), holding that "Subchapter I does not constitute criminal punishment[.]" All of Appellant's issues concerning whether SORNA is punitive thus are moot and meritless. *See* Appellant's Brief at 48, 53, 62, 72.

Appellant's remaining three claims concern whether SORNA infringes on the right to reputation under the Pennsylvania Constitution[14] by creating a "flawed" irrebuttable presumption and thereby denying Appellant of "procedural due process under state and federal law."  Appellant's Brief at 22, 31, 44.  Appellant relies heavily upon *In re J.B.*, 107 A.3d 1 (Pa. 2014), in which the Supreme Court determined that SORNA as applied to **juvenile** sex offenders violated due process rights through the use of an irrebuttable presumption.  Appellant cites to *J.B.*, 107 A.3d at 19, for the principle that the right to reputation "cannot be abridged without compliance with state

_____

[14]     According to Article I, Sections 1 and 11 of the Pennsylvania Constitution:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and **reputation**, and of pursuing their own happiness. . . .

> All courts shall be open; and every man for an injury done him in his lands, goods, person or **reputation** shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

Pa. Const. art. I, §§ 1, 11 (emphasis added).  These explicit references to "reputation" in the Pennsylvania Constitution have provided the basis for our appellate courts to regard reputation "as a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection."  *Commonwealth v. Mickley*, 240 A.3d 957, 962 n.7 (Pa. Super. 2020) (quoting *R. v. Commonwealth of Pennsylvania, Department of Public Welfare*, 636 A.2d 142, 149 (Pa. 1994)).

constitutional standards of due process." Appellant's Brief at 22; *see also id.*

at 23-25, 31-32, 34, 36, 38-41, 43-44. Appellant's argument continues:

> Registration harms reputation by "improperly brand[ing] all juvenile offenders' reputations with an indelible mark of a dangerous recidivist." *In re J.B.*, 107 A.3d at 19. While *J.B.* involved people who committed their crimes as minors, the reputational harm was often inflicted during adulthood. Act 29's effect is identical.

*Id.* at 22-23.

However, a similar argument was made before the Commonwealth Court[15] in *W.W. v. Pennsylvania State Police*, No. 239 M.D. 2020 (Pa. Cmwlth. filed January 15, 2021) (unpublished memorandum).[16] In that action, W.W. "challenges his sex offender registration obligations under Subchapter I[.]" *Id.* at 1. Like Appellant, W.W. "maintain[ed] that Act 29 deprives him of procedural due process by creating an irrebuttable presumption that he is incapable of rehabilitation, which encroaches upon his fundamental right to reputation, without any mechanism for proving otherwise." *Id.* at 3.

---

[15] "Although we are not bound by decisions from the Commonwealth Court . . ., we may use them for guidance to the degree we find them useful[ and] persuasive[.]" *Ferraro v. Temple University*, 185 A.3d 396, 404 (Pa. Super 2018) (citing *Newell v. Montana West, Inc.*, 154 A.3d 819, 823 & n.6 (Pa. Super. 2017)).

[16] "'Although we prefer to avoid citation to unreported opinions of any court,' where there is a 'scarcity of case law on [the] subject[,]' we are be 'compel[led] ... to consider all available writings on [the] topic.'" *Farese v. Robinson*, 222 A.3d 1173, 1188 (Pa. Super. 2019) (quoting *Commonwealth v. Manivannan*, 186 A.3d 472, 486 n.9 (Pa. Super. 2018)), *reargument denied* (January 13, 2020).

As the Commonwealth Court acknowledged, "[t]he difference [between *J.B.* and *W.W.*] is that we are not dealing with juvenile sex offenders, but adult sex offenders." *W.W.*, No. 239 M.D. 2020, at 9 (citing *Lacombe*, 234 A.3d 602; *Muniz*, 164 A.3d 1189). Analogously, the difference between the current action and *J.B.* is that Appellant is not a juvenile sex offender but an adult one. The Commonwealth Court further explained:

> Juveniles subject to registration suffered irreparable harms, including difficulty obtaining housing, employment, schooling, etc. SORNA did not provide juvenile offenders a meaningful opportunity to challenge the presumption. A reasonable alternative means of ascertaining the presumed fact was already in use in Pennsylvania for assessing which juvenile offenders pose a high risk of recidivism.[17] The Court concluded:
>
>> Given that juvenile offenders have a protected right to reputation encroached by SORNA's presumption of recidivism, where the presumption is not universally true, and where there is a reasonable alternative means for ascertaining the likelihood of recidivating, we hold that the application of SORNA's current lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders' due process rights by utilizing an irrebuttable presumption.

---

[17] A reasonable alternative, in fact, is already in use in Pennsylvania under SORNA. . . . SORNA specifically mandates individualized assessment of juveniles who have been adjudicated delinquent of specified crimes and who are committed to an institution nearing their twentieth birthday to determine whether continued involuntary civil commitment is necessary. A similar process could be utilized to assess which juvenile offenders are at high risk to recidivate.

*J.B.*, 107 A.3d at 19 (citations omitted) (footnote discussing Oklahoma's model for individualized risk evaluation of juvenile offenders omitted).

> *J.B.*, 107 A.3d at 19-20. . . . . [Unlike juvenile offenders,] the presumption that adult sex offenders as a cohort pose a higher risk of recidivism is still accepted as universally true.

*Id.* at 8-9. We agree with the analysis of the Commonwealth Court and find that *J.B.* is not controlling in the instant appeal involving an adult sex offender.

*W.W.* further addressed the question of the irrebuttable presumption:

> Although the right to reputation is a fundamental right, Act 29 is not making a determination as to W.W.'s likelihood to reoffend but to sex offenders as a cohort. . . .
>
> In *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), the United States Supreme Court considered a similar challenge to the presumption regarding adult sex offenders under Connecticut's version of Megan's Law. Therein, the United States Supreme Court held that individuals "who assert a right to a hearing under the Due Process Clause [(U.S. Const. amend. XIV, §1)] must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Id.* at 8. "[T]he fact that respondent seeks to prove that he is not currently dangerous is of no consequence under Connecticut's Megan's Law." *Id.* at 7.
>
> Similarly, Subchapter I does not signal the dangerousness of any particular offender. It merely provides that adult sex offenders, as a group, have a high risk of recidivism. A hearing on his individual dangerousness or likelihood to reoffend is irrelevant to the universal truth of the group as a whole. Therefore, the irrebuttable presumption doctrine does not apply.

No. 239 M.D. 2020, at 7, 9. Pursuant to *W.W.*, we conclude that, although reputation is a fundamental right in Pennsylvania, SORNA does not make an determination as to Appellant's individual likelihood to reoffend but to sex offenders as a cohort and therefore does not implicate the irrebuttable presumption doctrine. For the reasons given above, we find that Appellant's challenges to SORNA related to his right to reputation are meritless.

* * *

Based on the foregoing, Appellant is not entitled to relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/21